## Case No. 15,130.

### UNITED STATES v. FORDYCE et al.

[13 Int. Rev. Rec. 77.]

District Court, N. D. Alabama. March 11, 1871.

INTERNAL REVENUE—PRODUCTION OF BOOKS AND PAPERS—AUTHORITY OF SUPERVISOR —CONTEMPT.

[1. A supervisor of internal revenue entered the house of a banking firm in Huntsville, Ala., and demanded to see their books and papers. The members of the firm, doubting his right to such inspection, asked time to first consult counsel. This was refused, and, on their failure to at once produce their books, the supervisor served them with a summons requiring them to appear before him at his "office at Huntsville" instanter on the same day. He had no regular office in that city, and no place was specified in the summons. The firm then consulted their counsel, who, though somewhat in doubt, advised them to permit the inspection. They then sought the supervisor to apprise him of their consent, but were unable to find him, and he left the town on the same night. Held, that the firm were not unreasonable in asking a short time to consult attorneys, that a compliance with the summons according to its terms was manifestly impossible, that the supervisor acted with undue haste, and that the members of the firm were not punishable as for a contempt for what they had done.]

[2. By the forty-ninth section of the act of July 20, 1868 (15 Stat. 144), a supervisor of internal revenue who attempts to proceed against delinquents in the matter of making the annual returns required to be furnished to the assistant assessor, must proceed in manner and form precisely as the assistant assessor is required to proceed by the ninth section of the act of July 13, 1866 (14 Stat. 101), and not otherwise.]

BUSTEED, District Judge. The application made to me in this matter is that the respondents be punished as for a contempt for the alleged disobedience of a summons issued to them by Nathan D. Stanwood, supervisor of internal revenue for the state of Alabama, requiring them to produce books and papers, and to give evidence according to its exigence. The proceeding is based upon section 49 of the act of July 20, 1868 [15 Stat. 144], and section 9 of the act of July 13, 1866 [14 Stat. 101].

It is contended, among other things, by the counsel for the respondents, that these acts, so far as they authorize a compulsory production of books and papers, and a compulsory examination of a party, are a violation of the fourth and sixth amendments to the constitution of the United States. It is also contended that a true construction of the law of July 20, 1868, limits the power of supervisors to inquiries touching the conduct of assistant assessors and other subordinate officers of the revenue. In disposing of the present application I do not find it necessary to examine or decide either of these points, and hence express no opinion upon them.

The facts in the case are these: On the 5th day of March, A. D. 1870, the relator entered the banking house of the respondents at Huntsville, and asked to see the charter under which they did business. He was told they had no charter of incorporation. He then demanded to see their books and papers. The respondents refused to allow him, stating it was not their habit to exhibit their business or its evidences to straners. Thereupon Stanwood disclosed his official character, and the respondents requested time to consult their legal advisers on the subject of his right, and that, if he were authorized by law to make the demand, they would at once exhibit to him their books of account and other papers. Stanwood, for answer, read from a book what he claimed was the law of the case, and said it was not necessary the respondents should consult their attorneys; that he knew more revenue law than all the lawyers in Huntsville. The respondents, nevertheless, insisted. The supervisor, in a few minutes afterwards, served the respondents with a summons requiring them to appear before him at his "office at Huntsville," on the 5th day of March, 1870, instanter, of the same day, then and there to produce all books of account and papers, containing entire details of business between the bank of Fordyce & Rison and all other persons, from the time of commencing business to the present time, March 5, 1870, and to give evidence, according to their knowledge, respecting the liability of themselves or others to an excise duty or tax under the internal revenue laws of the United States. This was at 20 minutes after 9 o'clock in the morning. The respondents immediately sought their attorneys. During the consultation, and an hour and a half after the service of the first, a second summons of the same tenor as the first was served. The only difference that I can discover between the two is that, while in the first there is no place within the city of Huntsville named as the office of the supervisor, and to which the books and papers of the bank were directed to be brought on the instant, the second summons supplies the deficiency and names room No. 10, in the Huntsville Hotel, as the supervisor's office. It is worthy of remark, as bearing on the legal rights of the respondents upon this hearing, that the supervisor himself relies upon the summons first served in support of the respondents' liability. He annexes a copy of it to his application to me for the warrant of attachment against them.

It is in proof that no less distinguished counselors of this court than L. Pope and Richard Walker, Esqs., examined the question of the supervisor's right to require the respondents to obey his summons, and while both expressed themselves in doubt, they yet advised their clients to yield the point. This was at 4 o'clock p. m. on the 5th of March. The respondents thereupon went to the room of the supervisor in the hotel to offer their compliance. Stanwood was not in. They then went to the office of the collector of internal revenue to see if the supervisor might be there. Neither official was there, but the respondents saw a deputy of the collector, and informed him they had come to give Stanwood their books and papers or invite him to their office to examine them at the banking house. Subsequent inquiry developed the fact that Stanwood left Huntsville on the night of the same day. It is now sought to punish the respondents for their conduct in the premises, and the power of this court is invoked for that purpose.

It is the clear duty of the citizen to obey the laws of his country. There can be no cavil here. It is presumed, also, that every man knows the law. It must be borne in mind, however, that laws are made for the safety of the citizen as well as for the security of the state, and that the right of the subject to have the assistance of counsel in all matters touching his well-being is founded upon the plainest principles of propriety and the manifest dictates of necessity. The demand of the respondents to confer with their lawyers before they complied with the requirements of the supervisor was a reasonable one, and the opportunity should have been given. They were not obliged to accept Mr. Stanwood's estimate of his own legal ability, or his construction of the statute, and their readiness in following the advice of the Messrs. Walker, while it was yet uncertain whether the supervisor had the right which he claimed, shows an excellent spirit, and entitles them to the commendation of the court. Upon the face of the summons the respondents would have been authorized to disregard it. It requires them to produce all the books and papers of a large banking house, without saying where they are to be brought. It requires this to be done on the instant. This was impossible of performance, and "lex non cogit ad impossibilia." If it had been possible, the requirement was oppressive. It requires the respondents themselves to be at a place not named, on the throb of time next after the moment of the service of the summons. This was impossible of performance, and "lex non cogit ad impossibilia." If this were possible, this requirement also was oppressive. It requires them to produce all their books and papers from the time of their commencing business to the 5th day of March, 1870. This may or may not have been authorized, accordingly as the respondents had been doing business for a longer or shorter antecedent period. The revenue laws have nothing to do with what was the "annual income" of the respondents before the laws imposing an income tax were passed. It did not officially concern the supervisor to know whether the business of Fordyce & Rison prior to the date of these congressional enactments represented "articles or objects charged with a special duty or tax." That in what the supervisor did he was actuated by an honest zeal I have no doubt, but his proceedings are marked throughout with irregularity and haste. By the 49th section of the act of July 20, 1868, he may proceed in the matter of the "annual returns," required to be furnished to the assistant assessor, as those officers themselves may proceed, and what they are authorized to do in relation to delinquents is plainly set out in the 9th section of the act of July 13, 1866. The section is free from the least ambiguity, and the supervisor, if he undertakes to perform service under the act, must proceed in manner and form precisely as the assistant assessor is required to proceed, and in no other manner or form.

This matter appears to have given rise to considerable feeling. There should have been no pretext for this. The nonofficial must aid, not embarrass, the servants of the law; and the government official must challenge the consent of the citizen by consideration and courtesy, rather than provoke his opposition by incivility and harshness. Suavity of manners is something more than a personal accomplishment. It is an individual duty. The defendants are not in contempt, and are therefore discharged.